UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
 LBBW LUXEMBURG S.A.,                              :
                              Plaintiff,            :
                                                    :
                                                    :            12-CV-7311 (JPO)
                     -v-                            :
                                                    :            OPINION AND ORDER
WELLS FARGO SECURITIES LLC, f/k/a                  :
WACHOVIA CAPITAL MARKETS LLC, and                  :
FORTIS SECURITIES LLC,                             :
                              Defendants.           :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

     Plaintiff LBBW Luxemburg S.A. ("LBBW") brought suit against Defendants Wells

Fargo Securities LLC ("Wells Fargo"), the successor to Wachovia Capital Markets

("Wachovia"), and Fortis Securities LLC ("Fortis"; collectively with Wells Fargo,

"Defendants").  On March 31, 2014, the Court filed an opinion and order (Dkt. No. 56 (the

"Opinion")) granting in part and denying in part Defendants' motions to dismiss.  Defendants

have moved for reconsideration of the Opinion to the extent that it denied the portions of their

motions to dismiss pertaining to the claims for fraud, constructive fraud, negligent

misrepresentation, and breach of contract.  For the reasons that follow, Defendants' motions for

reconsideration are denied.

I.     **Legal Standard**

     "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources."  *Drapkin v. Mafco Consol.

Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks omitted).  To

prevail, the movant must demonstrate either (i) an intervening change in controlling law; (ii) the

availability of new evidence; or (iii) the need to correct clear error or prevent manifest injustice.

*Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580-81 (S.D.N.Y. 2013), *aff'd*, No. 13-3873-cv, 2015 WL 525697 (2d Cir. Feb. 10, 2015) (summary order).  A motion for reconsideration is not an opportunity "to obtain a second bite at the apple."  *Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013).  Thus, the movant cannot rely upon facts, issues, or arguments that were previously available but not presented to the court, or reargue issues that have already been considered.  *See Hayles v. Adv. Travel Mgmt. Corp.*, No. 01 Civ. 10017 (BSJ) (DF), 2004 WL 117597, at *1 (S.D.N.Y. Jan. 26, 2004).  Rather, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## II.     Discussion

Familiarity with the facts and procedural history of this case, which are set forth in the Opinion, is presumed.  Defendants identify several purported errors, each of which is considered in turn.

### A.      Value of the Preference Shares

Defendants first assert that the Court "misread Plaintiff's allegations" by concluding that Wachovia marked down the entire value of the collateralized debt obligation ("CDO") by 52.7%, when in fact the markdown affected only the preference shares.  (Dkt. No. 62 ("Wells Fargo Br.") at 3; Dkt. No. 64 ("Fortis Br.") at 8.)  But a closer reading of the Opinion shows that there was no such misunderstanding.  In setting out the facts, the Opinion noted that the preference shares were equity securities situated at the bottom of the hierarchical structure of the CDO. (Opinion at 5.)  It went on to explain that while LBBW's predecessor purchased only less risky

debt securities, it nonetheless "cared about the value of the equity shares" because the "equity shares would absorb the first losses" and thereby "form an equity cushion that protects the noteholders' safer investments." (*Id.*)

The main omission identified in the complaint was Wachovia's internal valuation of the preference shares at 52.7% of their represented aggregate liquidation preference at the time of closing. (*Id.* at 5 & n.5, 13-14; *see also* Dkt. No. 36 ("Am. Compl.") ¶¶ 31-36.) Wells Fargo argues that the markdown amounted "at most" to "about one-half of one percent[] of the CDO collateral's value." (Wells Fargo Br. at 4.) Wells Fargo made this precise argument during the original briefing on the motion to dismiss. (*See* Dkt. No. 39 ("Wells Fargo MTD Br.") at 16 (arguing that "the alleged omissions are inactionable because LBBW fails to allege how Wachovia's 52.7% mark on its own shares—representing about one-third of the bottom one percent of securities—was material to LBBW or its own (unrelated) senior securities.").)

The Court has already rejected this argument. The fact that the alleged omission affected this particular portion of the CDO does not render the complaint's assertions immaterial. As the complaint states, "the risk profile of the top layer of the capital structure"—the notes in which LBBW's predecessor invested—"is inextricably tied to the risk profile of each subordinate tranche in the capital structure, all the way down to and including the equity." (Am. Compl. ¶ 37.) The complaint also alleges that the markdown also "indicates a severe credit problem" with the CDO's collateral. (*Id.* ¶ 32.) The debt and equity securities were thus not "unrelated," as Wells Fargo maintains. Rather, on the facts pleaded by LBBW, there is a "substantial likelihood that a reasonable investor would consider" the omission alleged in the complaint "important in deciding how to act." (Opinion at 14 (quoting *ECA, Local 134 IBEW Joint*

*Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009)) (brackets omitted).)

Nor do the disclosures in the offering materials remedy the alleged misrepresentation.  As the Opinion states, a warning about "market fluctuation does not capture an instantaneous deliberate write-down" of over 50 percent from the represented aggregate liquidate preference of the preference shares.  (*See id.* at 13-14.)  *See also In re WRT Energy Sec. Litig.*, Nos. 96 Civ. 3610 (JFK), 96 Civ. 3611 (JFK), 1999 WL 178749, at *7 (S.D.N.Y. Mar. 31, 1999) ("The inclusion of general cautionary language regarding a prediction would not excuse the alleged failure to reveal known material, adverse facts." (quoting *Rubinstein v. Collins*, 20 F.3d 160, 171 (5th Cir. 1994)) (brackets omitted)).

While some of the Opinion's references to the marked-down securities could have more clearly distinguished between the value of the preference shares and the entire collateral of the CDO, this supposed oversight did not affect the decision's underlying reasoning.  Accordingly, the motion for reconsideration on this ground is denied.[1]

**B.    Negligent Misrepresentation and Constructive Fraud Claims**

Defendants assert that the Court erred in denying their motions to dismiss the claims for negligent misrepresentation and constructive fraud.  (Wells Fargo Br. at 2 & n.1; Fortis Br. at 6.) The Opinion concluded that Defendants had sufficiently disclaimed a fiduciary relationship, and

---

[1] The other disclosures identified by Wells Fargo also fail to change the result reached in the Opinion.  The Opinion mistakenly stated that the $1000 per share was the issuance price of the preference shares (Opinion at 5); Wells Fargo emphasizes that the par value of each preference share was one cent (*see* Wells Fargo Br. at 7).  But the Opinion recognized that $1000 per share was the stated aggregate liquidation preference for the equity shares.  (Opinion at 5 n.5.)  Wells Fargo's contentions do not undermine the complaint's principal allegation that Wachovia marked down its own holdings of the preference shares by 47.3% at the time of the closing without disclosing this fact to purchasers—an omission that the Court has concluded was material.

accordingly dismissed LBBW's claim for breach of fiduciary duty.  The Court went on to

conclude, however, that the negligent misrepresentation and constructive fraud claims survived.

(Opinion at 28-32.)

> **1.     Negligent Misrepresentation**

An element of a New York negligent misrepresentation claim is that "the defendant had a

duty, as a result of a special relationship, to give correct information." *Hydro Investors, Inc. v.

Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  As a general matter, the question whether a

special relationship exists is a factual one, and is "best determined on a case-by-case basis."

*Murphy v. Kuhn*, 682 N.E.2d 972, 975 (N.Y. 1997).  An effective disclaimer of a special

relationship permits the dismissal of a negligent misrepresentation claim.  *See Abu Dhabi

Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2013 WL 837536, at *4

(S.D.N.Y. Mar. 6, 2013).  As the Opinion noted, however (*see* Opinion at 31), a defendant's

disclaimer of a special relationship may not negate the special duty of care "where the subject of

the alleged misrepresentation . . . is peculiarly within a defendant's knowledge." *Abu Dhabi*,

2013 WL 837536, at *4; *accord Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566,

576 (2d Cir. 2005) ("[E]ven an explicit waiver will not be given effect . . . when the facts are

peculiarly within the knowledge of the party invoking the disclaimer." (quoting *Banque Arabe et

Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995)) (internal

quotation marks omitted)).

Defendants' motions for reconsideration on the negligent misrepresentation claim rely on

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679 (2d Cir. 2012)

(summary order) [hereinafter *LBW*], which was discussed in the Opinion.  In *LBW*, a company

related to LBBW brought suit for negligent misrepresentation, among other causes of action, in

relation to a CDO purchase.  The *LBW* panel held in a nonprecedential summary order[2] that the offering documents involved in that case "disclaimed both the existence of a special relationship of trust or confidence between the defendants and [the plaintiff] and any particular expertise on the part of the defendants with respect to the credit quality of the [investment]."  *Id.* at 682.

Certain language in disclaimers that the *LBW* panel cited is identical to language in disclaimers here.  (*Compare* Dkt. No. 40, Ex. 2, at x-xi, *with* Dkt. No. 49, Ex. 8, at 9-11.) Defendants contend that *LBW*'s holding, and the parallel language used in the disclaimers in both cases, should change the result reached by the Opinion as to the negligent misrepresentation claim.  But Defendants fail to appreciate the peculiar-knowledge exception.  *See Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) ("[I]f the allegedly misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentations.").  The motions for reconsideration do not challenge the Opinion's holding that the alleged misrepresentation here involved facts peculiarly within Defendants' knowledge. (*See* Opinion at 16-17 (holding that Defendants "had greater access to relevant facts about specific mortgages that were securitized in the CDO and about the CDO market more generally" and that LBBW's predecessor "could not have uncovered the discrepancy between Wachovia's internal valuation and its stated valuation of [the preference shares]").)  Because the alleged misrepresentations involved information peculiarly within Defendants' knowledge, the disclaimer is ineffective to defeat the negligent misrepresentation claim at this stage.

---

[2] While summary orders "do not provide binding authority," *Aguas Lenders Recov. Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 702 n.4 (2d Cir. 2009), they "nonetheless constitute valuable appellate guidance," *United States v. Tejada*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010).

In *LBW*, by contrast, the Second Circuit discussed the peculiar-knowledge exception and held that the complaint in that case "fail[ed] to allege facts plausibly establishing existence of such knowledge." *LBW*, 478 F. App'x at 683.[3]  Thus, *LBW*'s holding on the negligent misrepresentation claim in that case—despite the fact that the disclaimers in this case contain some identical language—is inapposite.  The grounds for the peculiar-knowledge exception did not exist in *LBW*.  Here, on the other hand, LBBW's pleadings successfully bring the peculiar-knowledge exception into play.  *See Abu Dhabi*, 2013 WL 837536, at *4 (holding that because plaintiffs "have raised a question of fact as to whether the misrepresentations were peculiarly within [the defendant's] knowledge, these disclaimers do not, as a matter of law, foreclose a negligent misrepresentation claim").

For these reasons, LBBW's negligent misrepresentation claim cannot be rejected on a motion to dismiss.  Defendants' motions for reconsideration on this claim are denied.

## 2.     Constructive Fraud

As set out in the Opinion, the elements of a New York constructive fraud claim are the same as those for an actual fraud claim, except the scienter element is replaced by a requirement that Plaintiff show "the existence of a fiduciary or confidential relationship warranting the trusting party to repose his confidence in the defendant and therefore to relax the care and vigilance he would ordinarily exercise in the circumstances."  *Brown v. Lockwood*, 432 N.Y.S.2d 186, 194 (App. Div. 2d Dep't 1980).  "[A] confidential relationship may indeed arise between the parties to a business relationship," *Societe Nationale d'Exploitation Industrielle des Tabacs*

---

[3] The district court in *LBW* did not explicitly discuss the peculiar-knowledge exception, but noted that "information about the mortgage-backed securities in [the CDO's] portfolio—and even the individual loans backing those securities—were available to [the plaintiff] if it examined SEC filings."  *Landesbank Baden-Württemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 624 (S.D.N.Y. 2011).

*et Allumettes v. Salomon Bros. Int'l Ltd.*, 674 N.Y.S.2d 648, 649 (App. Div. 1st Dep't 1998),

where "the defendant promisor has, or should have, superior and accurate knowledge concerning

the matters to which his statements relate," *Lockwood*, 432 N.Y.S.2d at 195.

The motions for reconsideration assert that the Opinion overlooked the fact that (as

observed above) the disclaimers in *LBW* used some of the same language as the disclaimers used

here. In *LBW*, a panel of the Second Circuit concluded that these disclaimers "cautioned

investors to consider and assess for themselves the likely level of defaults on the underlying

collateral, and disclaimed a fiduciary or advisory role," and further "required [the plaintiff] to

represent that it was a 'sophisticated investor' and had sufficient access to financial and other

information to make an informed investment decision, including an opportunity to ask questions

and request additional information concerning [the investment]." 478 F. App'x at 682. On this

basis, the *LBW* court held that the defendant there had effectively "disclaimed . . . the existence

of a special relationship of trust or confidence." *Id.*

But the fact that *some* of the language relied upon in *LBW* is also present in the

disclaimers in this case is not dispositive. The offering documents here also contained *additional*

language, relied on in the Opinion, indicating that Defendants agreed to notify securities

purchasers of material changes in the collateral. (*See* Opinion at 8, 29-30.) Defendants do not

assert that similar language appeared in the *LBW* disclaimers. This language at least creates a

question of fact as to whether a confidential relationship was created.[4]

---

[4] It is also worth noting that the complaint in *LBW* does not appear to have asserted a claim for
constructive fraud, and therefore the Second Circuit did not analyze such a claim. *See* 478 F.
App'x at 680 (stating that the appeal concerned "the dismissal of [the plaintiff's] common law
claims for fraud, negligent misrepresentation, and unjust enrichment").

Thus, regardless of whether an explicit disclaimer of a confidential relationship is unnecessary, as Defendants assert, the Court's conclusion remains unchanged.  Defendants have not shown that disclaimers in this case, taken as a whole, effectively warned securities purchasers that they should not "repose [their] confidence in [Defendants] and therefore . . . relax the care and vigilance [they] would ordinarily exercise in the circumstances."  *Lockwood*, 432 N.Y.S.2d at 194.  Accordingly, the motions for reconsideration of the holding on the constructive fraud claim are denied.

### C.    Strong Inference of Scienter as to Fortis

Last, Fortis asks for reconsideration of the Opinion's determination that LBBW's complaint sufficiently pleaded a strong inference of scienter as to Fortis.  (Fortis Br. at 4.)  To assert a fraud claim, the plaintiff's complaint must "give rise to a strong inference of fraudulent intent," which it may do "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (internal quotation marks omitted).  Among the claims that will meet the "strong inference" standard are allegations that defendants "knew facts or had access to information suggesting that their public statements were not accurate."  *ECA*, 553 F.3d at 199 (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000)) (internal quotation marks omitted).

Here, the complaint sufficiently alleges Fortis's participation in the alleged fraud.  As set out in the Opinion, the complaint alleges that Wachovia and Fortis "shared data, information, and analyses of the transaction" and "worked together as a seamless team."  (Am. Compl. ¶ 17.) It alleges that Fortis, along with Wachovia, "knew that the CDO structure and its associated risk was different than that represented to Plaintiffs on which the decision to invest was made, and indeed had changed for the worse, but did not disclose this material information to investors."

(*Id.* ¶ 61; *see also id.* ¶ 42 (asserting that Fortis "knew, or should have known" of issues with the CDO collateral "in its role as placement agent and co-bookrunner"); *id.* ¶ 73 (stating that Fortis "knew or should have known[] that the information provided by [Defendants] to the Plaintiff was no longer true" by the closing date).)

Fortis relies heavily on *LBW*, where a Second Circuit panel concluded—as noted above, in a nonprecedential summary order—that a fraud claim was deficient.  The *LBW* court held that "an allegation that defendants had access to information that was inconsistent with their alleged misstatements 'must specifically identify the reports or statements containing this information.'" *LBW*, 478 F. App'x at 682 (quoting *Novak*, 216 F.3d at 309).  The complaint in *LBW* explicitly identified only a 2007 due diligence report, which the Second Circuit concluded "does not bear on the defendants' knowledge at the time" of the issuance of the notes in question, in 2006.  *Id.*

*LBW* is distinguishable: there, the complaint did not point to any specific information inconsistent with the defendants' statements that was available at the time of the issuance of the notes in question.  Here, in contrast, LBBW has pleaded that Wachovia had internally marked down the value of the preference shares to 52.7% of their stated aggregate liquidation preference at the time of closing.  And as noted in the Opinion, Wachovia and Fortis jointly issued allegedly misleading offering documents two days before the closing of the transaction.  (Opinion at 26.) In conjunction with the complaint's allegations of information sharing between Wachovia and Fortis, and of Defendants' close working relationship in this transaction, the allegations give rise to a strong inference that Fortis engaged in "conscious misbehavior or recklessness," and that Fortis "knew facts or had access to information suggesting that [Defendants'] public statements were not accurate."  *Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 504-05 (S.D.N.Y. 2014) (internal quotation marks omitted).

In short, Fortis's briefing does not "point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted).  Accordingly, the motion for reconsideration on this point is denied.

**III.**     **Conclusion**

For the foregoing reasons, Defendants' motions for reconsideration are DENIED.

The Clerk of the Court is directed to close the motions at docket numbers 61 and 63.

SO ORDERED.

Dated:  March 30, 2015
        New York, New York

_____
                J. PAUL OETKEN
            United States District Judge